IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRIAN MICHAEL WATERMAN,

           Plaintiff,

vs.                                      Case No. 18-3135-SAC

BOARD OF COMMISSIONERS, et al.,

           Defendants.

**O R D E R**

This case is before the court for the purpose of screening plaintiff's pro se complaint and two recently filed motions to amend the complaint. The court proceeds pursuant to 28 U.S.C. § 1915A.

I. Pro se standards

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). A pro se litigant, however, is not relieved from following the same rules of procedure as any other litigant. See Green v. Dorrell, 969 F.2d 915, 917 (10th Cir. 1992), cert. denied, 507 U.S. 940 (1993). A district court should not "assume the role of advocate for the pro se litigant." Hall, supra. Nor is the court to "supply additional factual allegations to round out a

plaintiff's complaint." <u>Whitney v. State of New Mexico</u>, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

II. <u>Screening standards</u>

Title 28 United State Code Section 1915A requires the court to review cases filed by prisoners seeking redress from a governmental entity or employee to determine whether the complaint is frivolous, malicious or fails to state a claim upon which relief may be granted. When deciding whether plaintiff's complaint "fails to state a claim upon which relief may be granted," the court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)(quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).

> The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

<u>Id.</u> The court accepts the plaintiff's well-pled factual allegations as true and views them in the light most favorable to the plaintiff. <u>United States v. Smith</u>, 561 F.3d 1090, 1098 (10th Cir. 2009).

The court, however, will not accept broad allegations which lack sufficient detail to give fair notice of what plaintiff's

2

claims are.  Section 1983 plaintiffs must "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." Robbins v. Oklahoma ex rel. Dep't of Human Servs., 519 F.3d 1242, 1250 (10th Cir. 2008).  This can be particularly important in prisoner litigation.  Gee v. Pacheco, 627 F.3d 1178, 1185 (10th Cir. 2010)("A prisoner claim will often not be plausible unless it recites facts that might well be unnecessary in other contexts.").

III. Plaintiff's complaint and the motions to amend

Plaintiff's complaint names the following persons as defendants:  Pat Collins, a member of the Board of Commissioners of Cherokee County; Cory Moates, a member of the Board of Commissioners of Cherokee County; Neal Anderson, a member of the Board of Commissioners of Cherokee County; David Groves, Sheriff of Cherokee County; Michelle Tippie, Captain of the Cherokee County Jail; Ayrek Smith, a correctional officer at the jail at relevant times alleged in the complaint; Amanda Phillips, a shift supervisor at the jail; April Macafee, a sergeant at the jail; Thomas Degroot, an officer at the jail; Kristin Wagner, a nurse who does work at the jail; and Curtis Nida, a correctional officer at the jail.  The caption of the complaint also lists the "Board of Commissioners" as a defendant.  The court assumes plaintiff is suing the Board of Commissioners of Cherokee County.

In Count I plaintiff alleges excessive force and inadequate training and supervision. More specifically, he claims that on September 8, 2017, defendant Aryek Smith with both hands pushed plaintiff from the back into plaintiff's cell. Plaintiff alleges that he suffered neck pain from a whiplash-type injury for which he received medication. Plaintiff further alleges that defendant Smith and another correctional officer employed excessive force by tasing an inmate other than plaintiff. Plaintiff claims that there is inadequate training, supervision and discipline of jail officers which amounts to deliberate indifference to the inmates' rights. Finally, plaintiff asserts that his injury was not evaluated by defendant Wagner until September 12, 2017, contrary to an unspecified "excessive force policy."

In Count II, plaintiff alleges a violation of the Prison Rape Elimination Act. Plaintiff asserts that defendant DeGroot shut plaintiff in a closet with him and made plaintiff get naked while Degroot's body camera was recording. He claims that the same happened after every court date and attorney visit. He also claims that defendant Tippie allowed this to happen.

Plaintiff makes a number of other allegations in Count II. He contends that defendant DeGroot and Tippie have denied plaintiff multiple disciplinary hearings in violation of jail policies and plaintiff's constitutional rights to due process. Plaintiff

4

contends he was told by them that they have no obligation to do so and that it is a waste of time.

Plaintiff alleges that Degroot, Tippie, Macafee, Phillips and Nida have retaliated against plaintiff for filing grievances, resulting in lockdowns and segregation. He claims that defendant Groves has had plaintiff moved to a different jail. He asserts, somewhat vaguely, that he was moved again because of defendant Tippie. Finally, he asserts that he is in lockdown for asking to speak with defendant Macafee and has been punished for speaking with defendant Nida.

In Count III, plaintiff asserts that the jail has an unconstitutional policy which violates plaintiff's rights under the Fifth, Eighth and Fourteenth Amendments. Plaintiff claims that under this policy he has lost 33 pounds (23 pounds since transferring to the Cherokee County Jail on February 1, 2018), but is not permitted to eat extra portions even though he has been diagnosed with hypoglycemia. The policy allegedly does not allow extra food portions for an inmate until his body mass index is below 18.

Plaintiff has filed a motion for leave to amend the complaint (Doc. No. 10) to add Sgt. Christina Manes as a defendant. Plaintiff alleges that on June 1, 2018, Sgt. Manes refused to let plaintiff out to eat breakfast with everyone, mistakenly stating that plaintiff was on administrative lockdown and that on June 3,

5

2018, she made plaintiff wait until after 10:00 p.m. to allow plaintiff an hour out with general population. Plaintiff further alleges that on June 16 and 17, 2018 Sgt. Manes was supervising plaintiff while he was handcuffed and was attempting to open a protein shake with his cuffs on. Additionally, plaintiff asserts that Sgt. Manes "locked me down" for suggesting to another inmate that he file a grievance concerning Manes.

Plaintiff has filed a second motion for leave to amend the complaint to add a claim against defendant Tippie. Plaintiff asserts that Tippie will not allow plaintiff to make copies of legal work unless he has funds in his jail account.

IV. Screening the complaint and motions to amend

    A. Count I

In Count I, plaintiff alleges he suffered a whiplash-type of neck injury after defendant Smith, a jail officer, pushed plaintiff in the back with both hands into plaintiff's cell. Plaintiff alleges that he and Smith exchanged unfriendly remarks prior to Smith pushing plaintiff.[1]

The court will first address whether plaintiff has alleged sufficient facts to state a claim of governmental liability in Count I. Plaintiff asserts that Cherokee County's program for

---

[1] Plaintiff also alleges that, contrary to county policy, there was a four-day delay in plaintiff receiving medical attention after plaintiff submitted a medical request. This allegation does not appear relevant to plaintiff's claim of excessive force.

6

training, supervision or disciplining detention officers was inadequate and caused the excessive force incident alleged in Count I. Plaintiff, however, fails to allege facts showing how the training, supervision or discipline was inadequate and how there was a causal link to the excessive force incident.

The Supreme Court has stated that "proving . . . a [governmental entity] itself actually caused a constitutional violation by failing to train the offending employee presents 'difficult problems of proof,' and we must adhere to a 'stringent standard of fault,' lest municipal liability under § 1983 collapse into respondeat superior." Connick v. Thompson, 563 U.S. 51, 70 (2011)(quoting Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 406 and 410 (1997)). Along this same line, the Tenth Circuit has commented that where a plaintiff claims that a governmental entity "has not directly inflicted an injury," but nonetheless has caused an employee to do so, "'rigorous standards of culpability and causation must be applied to ensure that the [governmental entity] is not held liable solely for the actions of its employee.'" Barney v. Pulsipher, 143 F.3d 1299, 1307 (10th Cir. 1998)(quoting Bryan County, 520 U.S. at 405)).

The theory of vicarious liability does not apply to actions under § 1983. Connick, 563 U.S. at 60. Therefore, suing the Board of County Commissioners or any governmental official in his or her individual or official capacity must be premised upon more than

7

just an employment relationship with defendant Smith. Plaintiff must allege facts showing that the local government or individual defendant is responsible for the alleged illegal conduct. Id. As to a governmental entity, responsibility may be shown by establishing that an illegal action was taken pursuant to an official policy or custom. Id. at 61. A policy or custom may take the form of: 1) a formal regulation or policy statement; 2) an informal custom or widespread and well-settled practice; 3) the decision of an employee with final policymaking authority; 4) ratification by a final policymaker of a subordinate's decision subject to review and approval; or 5) failure to adequately train or supervise and employee, so long as that failure results from deliberate indifference to the injuries that may be caused. Bryson v. City of Oklahoma City, 627 F.3d 784, 788 (10th Cir. 2010). Here, plaintiff appears to assert that there was a custom and practice of excessive force and a failure to train or supervise resulting in deliberate indifference to the welfare of the inmates at the Cherokee County Jail. The facts alleged in the complaint to show such a custom and practice or failure to train or supervise are two alleged incidents of excessive force – the push-in-the-back alleged in Count I and a tasing incident involving defendant Smith and another jail officer.

A single incident of excessive force may be sufficient in a "narrow range of circumstances" to show deliberate indifference.

8

Connick, 563 U.S. at 63-64. The "single-incident" hypothetical described by the Supreme Court involved deploying armed police officers to capture fleeing felons with no knowledge at all of the constitutional limitations on the use of deadly force. Id. at 63-64 & 67 (discussing Canton v. Harris, 489 U.S. 378 (1989)). Here, plaintiff alleges two incidents of excessive force. But, he has not alleged facts showing inadequate training or a lack of all knowledge regarding the constitutional limits on the use of force by jail officers.[2] He has only made conclusory claims that training was inadequate. Moreover, governmental liability is not established where a single incident merely shows "that additional training would have been helpful in making difficult decisions." Id. at 68. "'Proving that an injury or accident could have been avoided if an [employee] had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct' will not suffice." Id. at 68 (quoting Canton, 489 U.S. at 391).

The court concludes that plaintiff's complaint fails to allege facts showing that the Board of County Commissioners or the Sheriff of Cherokee County had a policy or custom which was

---

[2] Plaintiff has cited Zuchel v. City and County of Denver, 997 F.2d 730 (10th Cir. 1993) and Allen v. Muskogee, Oklahoma, 119 F.3d 837 (10th Cir. 1997) in support of a claim that a single incident of excessive force can establish an inadequate training program. In both cases, however, there was evidence of inadequate training beyond an incident of unconstitutional conduct.

9

deliberately indifferent to the use of excessive force or which caused plaintiff's alleged injuries.

Similarly, to properly allege the liability of a supervisory defendant, plaintiff must describe an affirmative link between the supervisor and the alleged constitutional violation. Dodds v. Richardson, 614 F.3d 1185, 1195 (10th Cir. 2010). This requires allegations of: 1) a personal involvement in the violation; 2) a sufficient causal connection between the supervisor's involvement and the constitutional violation; and 3) a culpable state of mind. Id. "Personal involvement" can be alleged by stating that: 1) the supervisor personally participated in the alleged violation; 2) the supervisor exercised control or direction over the alleged illegal acts, or the supervisor's failure to supervise caused the alleged illegal acts; 3) the supervisor knew of the violation and acquiesced in its continuance; or 4) the supervisor promulgated, created, implemented or utilized a policy that caused the alleged deprivation of constitutional rights. Id. A "causal connection" is alleged by claiming that a supervisor defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive plaintiff of her constitutional rights. Id. at 1195-96.

Here, plaintiff has failed to allege facts showing the requisite affirmative link between a supervisory defendant and the alleged incident of excessive force. He has not asserted facts

10

showing personal involvement, a causal connection between the excessive force and a supervisor's action or inaction, or a culpable state of mind.

No individual defendant other than defendant Smith is alleged to have participated in the excessive force incident against plaintiff.[3] For the above-stated reasons, the court shall dismiss all defendants except defendant Smith from Count I.

B. Count II

In Count II plaintiff alleges a violation of the Prison Rape Elimination Act (PREA) by reason of numerous strip searches conducted by defendant Degroot. Plaintiff does not identify what provision of the PREA has been violated by defendants. Furthermore, this court has held that there is nothing in the PREA to indicate that it created a private right of action enforceable under § 1983. Wiggins v. Sisco, 2017 WL 4923395 *2 (D.Kan. 10/31/2017); see also Krieg v. Steele, 599 Fed.Appx. 231, 232-33 (5th Cir. 2015)(citing cases from three district courts); Walsh v.

---

[3] Count I includes some allegations regarding the delayed medical examination and treatment following the excessive force incident. Plaintiff does not assert, however, that the delay or some facet of his medical treatment violated his rights to constitutional conditions of confinement. Nor does the court perceive an obvious violation of plaintiff's federal rights in Count I's allegations regarding his medical treatment. Therefore, the court screens Count I solely as an excessive force claim. See Whitney v. State of N.M., 113 F.3d 1170, 1173-74 (10th Cir.1997)(a court should not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf).

N.J. Dept. of Corrections, 2017 WL 3835666 *3-4 (D.N.J. 8/31/2017). Therefore, the court shall dismiss this claim.

The court shall also dismiss plaintiff's retaliation claim in Count II. To state a First Amendment retaliation claim, plaintiff must allege: 1) he engaged in constitutionally protected activity; 2) the defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and 3) the defendant's adverse action was substantially motivated as a response to his constitutionally protected activity. Gray v. Geo Group, Inc., 2018 WL 1181098 *5 (10th Cir. 3/6/2018)(citing Mocek v. City of Albuquerque, 813 F.3d 912, 930 (10th Cir. 2015)). Plaintiff has alleged that defendants Degroot, Tippie, Macafee, Phillips and Nida "have all participated in retaliation for me filing grievances, resulting in lockdowns and segregation." Doc. No. 1, p. 11. Plaintiff, however has failed to describe facts showing that these defendants' actions were motivated to retaliate against plaintiff. The same can be said as to plaintiff's allegations that defendant Groves and defendant Tippie had plaintiff moved, and that plaintiff was in lockdown for asking to speak with Macafee and speaking with Nida. Plaintiff's general and subjective conclusions regarding motive are not sufficient to state a claim for retaliation. See Gray, at *5; Banks v. Katzenmeyer, 645 Fed.Appx. 770, 772 n.2 (10th Cir. 2016).

12

C. Motion to amend - Doc. No. 10.

Plaintiff's first motion to amend alleges discrimination, retaliation, and pretrial punishment, violating plaintiff's rights under the First, Fifth and Fourteenth Amendments. But, plaintiff's allegations fail to state a claim. Therefore, the motion to amend shall be denied. Frank v. U.S. West, Inc., 3 F.3d 1357, 1365 (10th Cir. 1993)(leave to amend may be denied upon a showing that the proposed amendment would be futile).

The conditions plaintiff describes do not amount to the denial of "'humane conditions of confinement [with] . . . the basic necessities of adequate food, clothing, shelter, and medical care and . . . reasonable measures to guarantee [his] safety.'" Ledbetter v. City of Topeka, Kan., 318 F.3d 1183, 1188 (10th Cir. 2003)(quoting Barney v. Pulsipher, 143 F.3d 1299, 1310 (10th Cir. 1998)). This is the Fourteenth Amendment standard which applies to pretrial detainees such as plaintiff. Plaintiff also does not describe facts showing a chilling injury or a motivation to retaliate against constitutionally protected activity. Thus, plaintiff has not properly alleged a First Amendment retaliation claim.

Upon considering legitimate penological interests, the Supreme Court has held that an inmate does not have a constitutional right to provide legal assistance to other inmates. Shaw v. Murphy, 532 U.S. 223, 230-32 (2001). The court does not

13

believe the rule would be different as to advice to file administrative grievances. Barton v. Huerta, 613 Fed.Appx. 426, 427 (5th Cir. 2015); Watlington v. Reigel, 2016 WL 2897618 *6 (M.D.Pa. 5/18/2016) aff'd, 723 Fed.Appx. 137, 140 (3rd Cir. 2018); Edgar v. Crawford, 2009 WL 3835265 *3 (W.D.Mo. 11/16/2009). Therefore, it would be futile to amend the complaint to claim that plaintiff was retaliated against for exercising a constitutional right to assist another inmate with a grievance.

Finally, the Equal Protection Clause does not prohibit classifications; "it simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992). Plaintiff alleges in conclusory fashion that he has been discriminated against and that he is treated differently than the majority of inmates. These broad claims of discrimination fail to assert sufficient specific facts demonstrating differential treatment of similarly-situated individuals. See Khalik v. United Air Lines, 671 F.3d 1188, 1194 (10th Cir. 2012)(affirming the dismissal of statutory discrimination claims for lack of factual detail).

D. Motion to Amend – Doc. No. 11.

Plaintiff alleges that his constitutional right to access to the courts is being denied by defendant Tippie who allegedly is barring plaintiff from making copies of papers at $.30 a copy unless plaintiff has the money in his jail account. Plaintiff

14

states that he has been ordered by the Tenth Circuit to complete and file an entry of appearance form within 30 days and send a copy to the opposing parties.  In general, "[p]hotocopy access is not an independent constitutional right, but exists only where necessary to the prisoner's right to seek legal redress." Muhammad v. Collins, 241 Fed.Appx. 498, 499 (10th Cir. 2007).  Plaintiff has not yet alleged facts showing that his access to the courts has been unduly hampered by a denial of photocopies.  He does not indicate, for example, that he cannot copy by hand the entry of appearance form.  Also, he has not claimed that he has asked the Tenth Circuit for additional time so that he may obtain sufficient funds for his jail account.  Nor has he demonstrated that he will suffer an imminent legal injury if he is denied the copies he seeks. Therefore, the court finds that the motion for leave to amend should be denied.  See Holt v. Werholtz, 185 Fed.Appx. 737, 739-40 (10th Cir. 2006)(denial of a somewhat similar claim regarding restrictions on photocopying because of debt prisoner owed for making legal copies).

V. Martinez report

The court cannot properly screen plaintiff's claims in Count II regarding the denial of disciplinary hearings and in Count III without additional information from appropriate officials of the Cherokee County Jail.  Accordingly, the court shall order the appropriate officials of the Cherokee County Jail and the Sheriff

15

of Cherokee County to prepare and file a Martinez report. See Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978).

Officials responsible for the operation of the Cherokee County Jail are directed to undertake a review of the alleged denial of disciplinary hearings as described in Count II and the allegations in Count III:

(a) to ascertain the facts and circumstances;

(b) to consider whether any action can and should be taken by the institution to resolve the subject matter of the complaint;

(C) to determine whether other like complaints, whether pending in this court or elsewhere, are related to this complaint and should be considered together.

Upon completion of the review, a written report shall be compiled. Statements of all witnesses shall be in affidavit form. Copies of pertinent rules, regulations, official documents and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report.

Authorization is granted to the appropriate officials of the Cherokee County Jail and the Sheriff of Cherokee County to interview all witnesses having knowledge of the facts, including the plaintiff.

No answer or motion addressed to the complaint shall be filed until the Martinez report requested herein has been prepared. Discovery shall not commence until plaintiff has received and

reviewed defendants' answers or response to the complaint and the report required herein. This action is exempted from the requirements imposed under FED.R.CIV.P. 26(a) and 26(f).

VI. Conclusion

For the above-stated reasons, the court directs as follows. Plaintiff's motion to amend (Doc. Nos. 10 and 11) are denied without prejudice. Plaintiff is ordered to show cause by July 19, 2018 why the court should not dismiss plaintiff's claims in Count I against all defendants except defendant Smith and plaintiff's claims in Count II except for his claims regarding the denial of disciplinary hearings.

A Martinez report is ordered consistent with section V of this order. The report should be filed on or before August 20, 2018.

The Clerk is further directed to transmit a copy of the complaint and this order to the Sheriff of Cherokee County.

**IT IS SO ORDERED.**

Dated this 26th day of June, 2018, at Topeka, Kansas.

s/Sam A. Crow _____
Sam A. Crow, U.S. District Senior Judge