**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

BRIAN WATERMAN, )
)
        Plaintiff, )
)
v. )
) Case No. 18-3135-CM-KGG
BOARD OF COUNTY COMMISSIONERS )
OF CHEROKEE COUNTY, KANSAS, et al., )
)
        Defendants. )
)

## MEMORANDUM AND ORDER

Plaintiff Brian Waterman, a prisoner in the Sedgwick County Jail, brings this § 1983 civil rights action pro se against a number of defendants associated with the Cherokee County Jail. The case is before the court on defendants' Motion to Dismiss Amended Complaint (Doc. 97), filed by defendants Board of County Commissioners for Cherokee County Kansas, David Groves, Michelle Tippie, Thomas DeGroot, Aryek Smith, and Amanda Phillips. Also pending is plaintiff's Motion for Evidentiary Hearing (Doc. 119).

The amended complaint contains five claims:

- Count I – Excessive force claim against defendant Smith;

- Count II – Denial of due process claim against defendants Tippie and DeGroot for denial of disciplinary hearings;

- Count III – Unconstitutional dietary policy against defendant Kristin Wagner, the nurse at Cherokee County Jail, Danny Davis, who provides food service at the jail, and possibly against defendants Groves and Tippie;

- Count IV – Excessive force claim against defendant DeGroot; and

-1-

- Count V – Medical neglect claim against nurse Wagner for failure to treat a staph infection.

Defendants have moved to dismiss all of plaintiff's claims except Count V. They argue that dismissal is warranted for the following reasons: (1) plaintiff's complaint fails to state a claim against the Board of County Commissioners; (2) the official capacity claims are barred by the Eleventh Amendment; (3) the excessive force claims are barred by qualified immunity; and (4) Counts II and III fail to state a claim because (a) plaintiff has not adequately alleged a due process violation for Count II, (b) the dietary policy is constitutional in Count III, and (c) plaintiff does not adequately allege a claim against defendant Phillips.

**I.     Standards of Review**

Defendants move to dismiss claims both for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under Rule 12(b)(6). Under the Eleventh Amendment, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). A party asserting Eleventh Amendment Immunity may move to dismiss under Rule 12(b)(1) because "Eleventh Amendment Immunity concerns the subject matter jurisdiction of the district court." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).

The court will grant a 12(b)(6) motion to dismiss only when the factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the factual allegations need not be detailed, the claims must set forth entitlement to relief "through more than labels, conclusions and a formulaic recitation of the elements of a cause of action." *In re Motor Fuel Temperature Sales Practices Litig.*, 534 F. Supp. 2d 1214, 1216 (D. Kan. 2008). The allegations must contain facts sufficient to state a claim that is plausible, rather than merely conceivable. *Id*. "All well-pleaded facts, as distinguished from conclusory allegations, must be taken

as true." *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court construes any reasonable inferences from these facts in favor of the plaintiff. *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006).

When, as here, a plaintiff is proceeding pro se, the court construes his pleadings liberally and holds the pleadings to a less stringent standard than lawyer-drafted pleadings. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *McBride v. Deer*, 240 F.3d 1287, 1290 (10th Cir. 2001). But liberal construction does not "relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The court need not accept as true those allegations that state only legal conclusions. *See id.* at 1110.

## II.   **Factual Background**

The following facts are taken from plaintiff's complaint and are viewed in the light most favorable to plaintiff. Defendants have offered video recordings of the two events allegedly involving excessive force. But because plaintiff has challenged the authenticity of the videos submitted, the court has not considered the content of the video recordings. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) (citing *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997)) ("In addition to the complaint, the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."). This also removes the need for any type of evidentiary hearing, as requested by plaintiff in Doc. 119.

### *A. Facts Relating to Count I*

On September 8, 2017, defendant Smith pushed plaintiff from the back with both hands to get him into his cell. The two had engaged in an unfriendly exchange before defendant Smith took

plaintiff to his cell. Before reaching the cell (and being pushed), plaintiff claims that he slowed down to fix his shoe, but he does not allege that defendant Smith knew that was the reason he slowed down.

Plaintiff alleges that the push resulted in whiplash to his neck. Plaintiff does not allege that he immediately complained of pain or requested medical attention. But he claims that he was placed on medication for neck pain four days later.

### *B. Facts Relating to Count II*

Plaintiff claims that defendants Tippie and DeGroot have denied him "countless disciplinary hearings" and that the hearings he has been given have been inadequate. Plaintiff identified six specific instances in which he was denied due process:

- June 24, 2017: Plaintiff was written up eighteen times "due to his food being bad" and two false reports were made. The officers allegedly involved are not parties to this action. Plaintiff does not allege a punishment.

- August 31, 2017 – September 5, 2017: Received no disciplinary hearings "for any writeups." He does not allege who wrote him up or denied him hearings. He also does not allege a punishment.

- September 2, 2017: A non-party officer fabricated an accusation that plaintiff threatened staff. Plaintiff was not given a hearing. Plaintiff does not allege a punishment.

- September 5, 2017: Defendant DeGroot took plaintiff to a first appearance room, presumably for a disciplinary hearing. Plaintiff does not allege a punishment.

- October 15, 2017: Defendant Phillips fabricated a report that "she had to come make sure [his] cell door was secured" and defendant DeGroot denied plaintiff a hearing and gave plaintiff fifteen days.

-4-

- April 25, 2018: Plaintiff requested a disciplinary hearing. He was denied and was given an extra eighteen days in segregation.

- May 3, 2018: Plaintiff filed a grievance with Sheriff Groves and was given eighteen days with no disciplinary hearing.

### C. Facts Relating to Count III

The sheriff—not the Board of County Commissioners—enters into contracts for health care and food services for the jail. Defendant Wagner is a contract medical provider for inmates. Plaintiff alleges that defendant Wagner adopted a body mass index ("BMI") policy that only requires prescribed diets when an inmate's BMI falls below 18.5. Plaintiff claims that, because of this policy, he lost almost thirty pounds between February 2018 and October 2018. According to plaintiff, he weighed 171 pounds on February 8, 2018, and he weighed 142 pounds on or about October 4, 2018. But plaintiff does not allege that his BMI has dropped below 18.5. The court takes judicial notice that a BMI of 18.5 to 24.9 is considered normal.

Plaintiff claims that defendant Wagner refused to adjust his diet despite his weight loss and that she tampered with the scales. He also alleges that the contract food service provider, Danny Davis, does not always provide adequate daily calories. Plaintiff claims injury in the form of significant weight loss, physical pains, and major discomfort.

### D. Facts Relating to Count IV

Plaintiff alleges that on July 29, 2018, defendant DeGroot placed a handcuff on plaintiff too tightly. Plaintiff told defendant DeGroot that the handcuff was tight and demanded that defendant DeGroot show that he could put his finger in there. Plaintiff told defendant DeGroot that he was not giving him his other hand, but also claims that he was not being combative. Defendant DeGroot then yanked plaintiff out of the shower and dragged plaintiff to his cell. In the process, plaintiff slipped and

fell on his knee on the concrete, but defendant DeGroot continued to drag him. Plaintiff claims that his wrist was swollen and bruised with dark red marks from the cuff.

**III. Discussion**

*A. Claim Against the Board of County Commissioners*

Plaintiff makes limited allegations against the Board of County Commissioners. He claims that the Board did not supervise the sheriff and his deputies, and that the Board is liable as "the final policy maker regarding the contracts with Manzer Health Clinic, and the food corporation." (Doc. 53, at 10.) But Kansas Boards of County Commissioners do not oversee the sheriff or his office's operation. *Blume v. Meneley*, 283 F. Supp. 2d 1171, 1174–75 (D. Kan. 2003). And here, the contracts for health care and food service were entered with the sheriff—not the Board of County Commissioners. Plaintiff has not stated a claim against the Board of County Commissioners (and has not addressed this argument in his response brief). The court dismisses the Board from the case.

*B. Eleventh Amendment Immunity*

Defendants next argue that the sheriff and his detention officers are entitled to Eleventh Amendment immunity for the monetary claims against them in their official capacities. The court agrees. Again, plaintiff did not address this issue in his response brief.

Eleventh Amendment immunity bars any monetary relief from defendants in their official capacities.[1] *Allen v. Zavaras*, 474 F. App'x 741, 743–44 (10th Cir. 2012) ("[I]t is well established that the Eleventh Amendment precludes suits in federal court seeking retroactive declaratory or monetary relief from state officials acting in their official capacities."). Both the Tenth Circuit and this court have granted Kansas sheriffs immunity for monetary claims against them. *See Hunter v. Young*, 239 F.

---

[1] In plaintiff's request for relief, he indicates that he is entitled to "injunctive, $150,000" and "declaratory $150,000," along with other monetary damages. Although plaintiff uses the labels injunctive and declaratory relief, he only refers to these types of relief with a dollar amount, and does not specify any other action he wants the court to order. In light of the context (as well as the fact that plaintiff is no longer housed in Cherokee County), the court considers his requests to be additional demands for money damages despite the labels.

App'x 336, 338 (10th Cir. 2007); *Myers v. Brewer*, No. 17-2682-CM, 2018 WL 3145401, at \*6 (D. Kan. June 27, 2018). Plaintiff has not offered a valid argument why this court should not also apply Eleventh Amendment immunity to the sheriff and his officers here. *See Hunter*, 238 F. App'x at 338 (applying immunity to sheriff's officer). The court therefore grants defendants' motion as to the claims against defendants in their official capacities.

### C. *Qualified Immunity*

Qualified immunity protects government officials from individual liability under § 1983 unless their conduct "violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Schroeder v. Kochanowski*, 311 F. Supp. 2d 1241, 1250 (D. Kan. 2004) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (noting that qualified immunity analysis is identical under 42 U.S.C. § 1983 and *Bivens*). When a defendant raises qualified immunity, the plaintiff must show that (1) the defendant's actions violated a constitutional or statutory right and (2) the right violated was clearly established at the time of the conduct in issue. *Schroeder*, 311 F. Supp. 2d at 1250. The court may consider either prong of the qualified immunity test first. *Panagoulakos v. Yazzie*, 741 F.3d 1126, 1129 (10th Cir. 2013); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The first qualified immunity question is whether defendants used excessive force in violation of plaintiff's Fourteenth Amendment due process rights. The Fourteenth Amendment governs any claim of excessive force brought by a pretrial detainee. *Estate of Booker v. Gomez*, 745 F.3d 405, 421 (10th Cir. 2014). And under the Fourteenth Amendment, "the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one." *Kingsley v. Henderson*, 135 S. Ct. 2466, 2473 (2015). This standard requires the pretrial detainee to show that the force purposefully or knowingly used against him was objectively unreasonable. *Id.* In applying this standard, courts view the facts

and circumstances of the case "from the perspective of a reasonable officer on the scene," considering the following nonexhaustive factors:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The court also accounts for the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained," appropriately deferring to "policies and practices that in th[e] judgment" of jail officials "are needed to preserve internal order and discipline and to maintain institutional security." *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 540, 547) (internal quotation marks omitted). When the force involved is the use of handcuffs, the plaintiff must show some "actual, non-de minimis physical, emotional, or dignitary injury." *Scott v. City of Albuquerque*, 711 F. App'x 871, 880 (10th Cir. 2017) (quoting *Fisher v. City of Las Cruces*, 584 F.3d 888, 899) (10th Cir. 2009)) (internal quotation marks omitted).

### 1. Excessive Force – Aryek Smith (Count I)

Applying these standards, the court looks at plaintiff's allegations of excessive force. The first is in Count I, against defendant Smith. Defendant Smith pushed plaintiff with his bare hands into plaintiff's cell. Prior to that time, the two had engaged in an unfriendly exchange. Plaintiff claims that he stopped to fix his shoe when defendant Smith pushed him, but plaintiff has not alleged that defendant Smith knew he was trying to fix his shoe. The push allegedly resulted in temporary neck pain ("whiplash") that plaintiff saw the nurse for several days later. All of these facts are contained in plaintiff's amended complaint, without referencing the video.

Without referencing the video or other evidence, the court cannot evaluate the factors identified in *Kingsley* to determine whether the force used was excessive under the circumstances. But even if

the court were to accept that a single bare-handed push to a seemingly resisting inmate could be excessive force, plaintiff has not offered case law that would meet the second prong of the qualified immunity analysis—that the violated right was clearly established. On the other hand, defendant cited two cases suggesting that in the situation outlined above, a bare-handed push would not violate the constitution. *See Routt v. Howard*, No. 17-CV-0020-JED-JFJ, 2018 WL 2392541, at *7 (N.D. Okla. May 25, 2018); *see also Scott*, 711 F. App'x 871. Plaintiff did not cite any case law that would show that it was clearly established that defendant Smith's conduct was unconstitutional, particularly when plaintiff admits that he slowed down before reaching the cell. Plaintiff instead only cited general caselaw about the use of excessive force. Plaintiff has not met his burden of showing that defendant Smith is not entitled to qualified immunity.

2. Excessive Force – Thomas DeGroot (Count IV)

In Count IV, plaintiff accuses defendant DeGroot of using excessive force when applying handcuffs to one hand and dragging plaintiff to his cell.

Plaintiff alleges that because of defendant DeGroot's actions, he suffered bruising and swelling of the wrist, as well as a scraped knee. He does not allege receiving any medical treatment. As noted above, it is difficult to show that the use of handcuffs constitutes excessive force, particularly because plaintiffs must show more than de minimis injury—something that plaintiff has not alleged here. Plaintiff also has not offered case law clearly establishing that the use of handcuffs and pulling plaintiff to his cell by one handcuff would violate the constitution when plaintiff refused to offer his other hand for cuffing. Defendant DeGroot is entitled to qualified immunity on this claim.

### D. Failure to State a Claim – Counts II and III

Counts Two and Three challenge defendants' failure to give plaintiff disciplinary hearings and development of a dietary policy.

### 3. Due Process Violations (Count II)

For most of the specific instances plaintiff identifies in this claim, plaintiff has failed to show that he actually received a punishment. Also for several of them, he failed to allege who took the disciplinary actions. There are only three instances allegedly involving some type of punishment:

- October 15, 2017: Plaintiff alleges that he received fifteen days.

- April 25, 2018: Plaintiff alleges that he was denied a disciplinary hearing and received eighteen days in segregation.

- May 3, 2018: Plaintiff alleges that after filing a grievance with Sheriff Groves, he had to spend another 18 days in segregation without a hearing.

Defendants argue that with all three of these instances, plaintiff does not allege facts that make it plausible that the segregation was for punishment and not at his own request, for his own safety. Defendants claim that the segregation days may have been for managerial reasons rather than punitive reasons.

The Fourteenth Amendment prohibits a pretrial detainee from being punished without due process prior to a lawful conviction. *Peoples v. CCA Detention Centers*, 422 F.3d 1090, 1106 (10th Cir. 2005) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1970)). The does not mean that a pretrial detainee cannot be subjected to the conditions and restrictions of incarceration; but the conditions and restrictions may not constitute punishment. *Id*. The critical question is whether the condition is "imposed for the purpose of punishment or whether it is incident to some other legitimate government purpose." *Id.* (citation omitted). If a prison official acts with intent to punish, the act constitutes unconstitutional pretrial punishment. But if a pretrial detainee is placed in segregation for managerial reasons and not for punishment, then no process is required. *Id*. at 1106 (citation omitted).

-10-

Based on the allegations in plaintiff's complaint, the court cannot determine why plaintiff was placed or kept in segregation on these three occasions. If placement was for punishment without a hearing, such action may have violated plaintiff's due process rights. The court denies defendants' motion to dismiss relating to plaintiff's placement in segregation on the three instances identified above.

4. Dietary Policy (Count III)

Plaintiff's claim in Count III is that defendant Wagner instituted a BMI policy that has resulted in the unconstitutional deprivation of medical care in the form of a prescribed diet. Again, plaintiff's pretrial detainee status requires that this claim be analyzed under the Fourteenth Amendment. But this standard is the same as that applied under the Eighth Amendment, which requires a showing of deliberate indifference to an inmate's serious medical needs. *Walton v. Gomez*, 745 F.3d 405, 429 (10th Cir. 2014). The medical condition must be sufficiently serious and the official must have recognized a substantial risk of substantial harm and acted or failed to act despite that knowledge.

These allegations appear to be mostly—if not entirely—against defendants Wagner and Davis. Defendants Wagner and Davis are not moving parties for this motion. To the extent that plaintiff is attempting to state a claim against defendants Tippie or Groves, those two defendants move for dismissal. Plaintiff has not pleaded any facts that would suggest that defendants Tippie or Groves were aware that he had a serious medical need for additional calories. And medical providers advised jail staff that plaintiff's health care needs were being met. Plaintiff has not cited any law that would require jail staff to discount the opinion of medical providers in this instance. The court determines that defendants Tippie and Groves are entitled to qualified immunity on this claim.

5. Claims Against Defendant Phillips

Plaintiff alleges that defendant Phillips is a jail supervisor and that she wrote reports concerning disciplinary matters. But plaintiff does not allege that defendant Phillips actually denied him hearings on disciplinary matters or punished him. Plaintiff has not stated a claim against defendant Phillips, and she is dismissed from the case.

**IT IS THEREFORE ORDERED** that defendants' Motion to Dismiss (Doc. 97) is granted in part and denied in part. Specifically, the court orders the following:

- The Board of County Commissioners is dismissed from the case, as are the official capacity claims against the sheriff and his detention officers.

- Count I is dismissed against defendant Smith and defendant Smith is dismissed as a defendant from the case.

- Count IV is dismissed against defendant DeGroot, but defendant DeGroot remains a defendant in Count II.

- Count III is dismissed against defendants Tippie and Groves (to the extent that this claim was brought against them). Defendant Tippie remains a defendant in Count II, but defendant Groves is dismissed from the case.

- Defendant Phillips is dismissed from the case.

- Count II against defendants Tippie and DeGroot is dismissed <u>except for</u> as it relates to the incidents dated October 15, 2017, April 25, 2018, and May 3, 2018.

**IT IS FURTHER ORDERED** that plaintiff's Motion for Evidentiary Hearing (Doc. 119) is denied.

Dated this 26th day of June, 2019, at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**
